

LYONS & FLOOD, LLP
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

Attorneys for Plaintiff
SHIPPING-LAND CO., LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHIPPING-LAND CO., LTD.,

                     Plaintiff,

- against -

MAKEBA MARINE COMPANY,

                     Defendant.
------------------------------------------------------------X

ECF CASE

08 Civ.

## VERIFIED COMPLAINT

Plaintiff SHIPPING-LAND CO., LTD. ("SHIPPING-LAND"), by its attorneys, Lyons & Flood, LLP, as and for its Verified Complaint against defendant, MAKEBA MARINE COMPANY ("MAKEBA"), alleges upon information and belief as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the action falls within the Court's subject matter jurisdiction pursuant to 28 USC §§ 1331 and 1333. Subject matter jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 USC § 201 *et seq.* and/or the Federal Arbitration Act, 9 USC § 1 *et seq.*

    2.    At all material times, plaintiff SHIPPING-LAND was and still is a corporation organized and existing under the laws of a foreign country, with an office and place of business in the Republic of Korea and was the charterer of the M/V MERAKI ("the Vessel").

3. Upon information and belief, at all material times, defendant MAKEBA was and still is a corporation organized and existing under the laws of a foreign country, the Marshall Islands, with an office and place of business in Panama.

## AS AND FOR A FIRST CAUSE OF ACTION

4. By a NYPE form charter party dated February 7, 2007, (the "Charter Party") plaintiff SHIPPING-LAND time chartered the Vessel from Propulsion Marine S.A. ("Propulsion"), the registered owner of the Vessel, for a minimum period of 12 months to a maximum period of 14 months, plus or minus 15 days at plaintiff SHIPPING-LAND's option.

5. On or about April 28, 2008, Propulsion delivered the Vessel to plaintiff SHIPPING-LAND.

6. Thus, under the Charter Party, the Vessel would be redelivered by plaintiff SHIPPING-LAND to Propulsion at the latest on July 13, 2008.

7. Under the Charter Party, plaintiff SHIPPING-LAND was required to make hire payments at the rate of $12,500.00 pro rata, per day, less 5.00% in address and brokerage commissions.

8. Subsequently, plaintiff SHIPPING-LAND sub-chartered the Vessel to OCEAN K&S CORPORATION ("OKS") at a daily hire rate of $21,000.00, less 3.75% in address and brokerage commissions, but otherwise on back to back terms with the Charter Party.

9. OKS, in turn, sub-chartered the Vessel to NOBEL BULK CARRIERS LTD. ("NBC") at a daily hire rate of $24,500.00, less 6.25% in address and brokerage commissions, but otherwise on back to back terms with the Charter Party.

10. On or about December 27, 2007, Propulsion transferred ownership of the Vessel to defendant MAKEBA.

11. Plaintiff SHIPPING-LAND, defendant MAKEBA, and Propulsion, entered into a Novation Agreement with respect to the change in ownership of the Vessel.

12. Following the change in ownership of the Vessel, on May 14, 2008, the Vessel was placed in dry dock to satisfy class requirements.

13. Upon information and belief, the Vessel is expected to remain in dry dock until on or about August 12, 2008.

14. Thus, pursuant to Clause 53 of the Charter Party, from May 14, 2008, through July 13, 2008 (the latest the Vessel would be redelivered by plaintiff SHIPPING-LAND under the Charter Party), the Vessel has been off hire for a period of 60 days.

15. Prior to the Vessel being placed in dry dock, approximately 45 days of off hire had accrued.

16. Thus, the total amount of accrued and anticipated off hire under the Charter Party is approximately 105 days.

17. Pursuant to Clause 100 of the Charter Party, plaintiff SHIPPING-LAND has the option to add any periods of off hire to the original period of the Charter Party by giving written notice 40 days prior to redelivery of the Vessel.

18. Therefore, by giving written notice to owners Propulsion and/or defendant MAKEBA, plaintiff SHIPPING-LAND could extend the Charter Party's period to October 25, 2008.

19. On April 17, 2008, and on May 19, 2008, plaintiff SHIPPING-LAND gave written notice of the total accrued off hire to Propulsion and defendant MAKEBA and gave notice that it wished to exercise Clause 100 of the Charter Party by adding the off hire to the Charter Party's period.

20. However, defendant MAKEBA wrongfully, and in breach of the Charter Party, has refused to recognize plaintiff SHIPPING-LAND's claim for the 45 days of off hire which had accrued prior to the Vessel's change of ownership, and has further refused to recognize plaintiff SHIPPING-LAND's right to extend the Charter Party's period based on the off hire.

21. Accordingly, defendant MAKEBA has wrongfully taken the position that the Charter Party was terminated on July 13, 2008, and has refused to redeliver the Vessel to plaintiff SHIPPING-LAND upon the Vessel's anticipated release from dry dock on August 12, 2008, or shortly thereafter. SHIPPING-LAND has now accepted defendant MAKEBA's repudiation of the Charter Party.

22. Due to defendant MAKEBA's wrongful breach of the Charter Party, plaintiff SHIPPING-LAND has incurred damages for loss of hire from its sub-charter of the Vessel to OKS, in an amount of $875,437.50, as nearly as now can be calculated.

## AS AND FOR A SECOND CAUSE OF ACTION

23. Plaintiff SHIPPING-LAND repeats and realleges all of the allegations contained in paragraphs 1 to 22, as if set forth fully herein.

24. Upon information and belief, due to defendant MAKEBA's wrongful breach of the Charter Party, OKS will have incurred damages for loss of hire from its sub-charter of the Vessel to NBC.

25. Upon information and belief, as nearly as can now be calculated OKS's damages for loss of hire amount to approximately $289,406.25 (based on the difference between the hire rates paid by OKS and the hire rates paid by NBC, multiplied by the total off hire period of 105 days).

26. Upon information and belief, due to defendant MAKEBA's wrongful breach of

the Charter Party, NBC will have incurred damages for lost profits from the early termination of its sub-charter of the Vessel.

27.    Upon information and belief, as nearly as can now be calculated NBC's damages for loss of hire amount to approximately $1,079,531.25 (based on the difference between the hire rates paid by NBC and the prevailing market hire rates, multiplied by the total off hire period of 105 days).

28.    Due to defendant MAKEBA's wrongful breach of the Charter Party, plaintiff SHIPPING-LAND will be required to provide indemnity to OKS for OKS's loss of hire from the sub-charter of the Vessel to NBC, and for OKS's provision of indemnity to NBC for NBC's lost profits from the early termination of the sub-charter of the Vessel.

## AS AND FOR A THIRD CAUSE OF ACTION

29.    Plaintiff SHIPPING-LAND repeats and realleges all of the allegations contained in paragraphs 1 to 29, as if set forth fully herein.

30.    Pursuant to the terms of the Charter Party, plaintiff SHIPPING-LAND has made several hire payments to defendant MAKEBA.

31.    Due to MAKEBA's wrongful breach of the Charter Party, the Vessel has been taken off hire by MAKEBA on several occasions.

32.    Defendant MAKEBA has failed to return the Vessel to plaintiff SHIPPING-LAND and has not remitted hire payments made by SHIPPING-LAND in excess of those required by the terms of the Charter Party.

33.    Therefore, plaintiff SHIPPING-LAND has suffered damages for excess hire payments amounting to $159,840.95.

34.    In sum, plaintiff SHIPPING-LAND has suffered direct and indirect damages

($875,437.50 + $289,406.25 + $1,079,531.25 + $159,840.95) amounting to approximately $2,404,215.95, as nearly as now can be calculated.

35. Pursuant to the Charter Party, disputes between plaintiff SHIPPING-LAND and defendant MAKEBA are subject to English law and London arbitration.

36. Therefore, this action is in aid of arbitration in accordance with 9 USC § 8.

37. Under English law, plaintiff would expect a London arbitration tribunal to award interest on the principal amount awarded at a rate of approximately 7.5% compounded annually for three years with three monthly rests. Plaintiff has therefore calculated interest on the sums set forth in paragraph ¶ 40 of the Verified Complaint herein based on that interest rate.

38. Under English law, plaintiff would also expect a London arbitration tribunal to award the legal costs of arbitration against defendant. These legal costs would include plaintiff's English solicitors' legal fees, experts' fees, barristers' fees in relation to the arbitration hearing, costs associated with the arbitration hearing itself, and travel costs and expenses for witnesses attending the hearing.

39. The defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, but upon information and belief, MAKEBA has, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court held in the hands of garnishees, which are believed to be due and owing to defendant MAKEBA.

40. Plaintiff SHIPPING-LAND hereby demands:

    (a) Payment of $2,404,215.95 as security for the amounts due and owing to plaintiff under the Charter Party;

(b) Payment of $600,372.10 as security to cover interest on the amount in paragraph (a) above as recoverable under English law. Plaintiff reserves the right to amend the demand herein in the event the amount in paragraph (a) above increases over time; and

(c) Payment of $500,000.00 as security to cover the legal costs in connection with the London arbitration as recoverable under English law. Plaintiff reserves the right to amend the demand in the event the legal costs increase over time.

**Total $3,504,588.05**

WHEREFORE, plaintiff SHIPPING-LAND CO., LTD., prays that:

a.  process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against defendant citing it to appear and answer under oath all and singular the matters alleged;

b.  since defendant cannot be found within this District, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and the United States Arbitration Act, 9 USC §§ 1, 8 and 9, attaching all of the defendant's tangible or intangible property in this District or claimed by or being held for, belonging to, due or being transferred to, from, or for the benefit of defendant by any garnishees within this District, in the amount of $3,504,588.05 to secure plaintiff SHIPPING-LAND's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged;

  c.  this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary;

  d.  judgment be entered by this Court in favor of plaintiff and against defendant enforcing and recognizing any London arbitration award(s) or judgment(s) that may be rendered on the claims set forth herein; and

  e.  plaintiff has such other, further, and different relief as this Court may deem just and proper.

Dated: August 8, 2008

               LYONS & FLOOD, LLP
               Attorneys for plaintiff
               SHIPPING LAND CO., LTD.

      By:  _____
               Kirk M. Lyons (KL-1568)
               65 West 36th Street, 7th Floor
               New York, New York 10018
               (212) 594-2400

U:\kmhldocs\2652008\Legal\Verified Complaint.doc

## VERIFICATION

Kirk M. Lyons, the undersigned, an attorney admitted to practice in this Court, state that I am the attorney of record for plaintiff SHIPPING-LAND CO., LTD., in the within action; I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my knowledge based on documents in my file, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The reason this Verification is made by me and not an officer of plaintiff SHIPPING-LAND CO., LTD., is because there are no officers now present in this District.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on:   August 8, 2008

_____
Kirk M. Lyons

U:\kmhldocs\2652008\Legal\Verified Complaint.doc